**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez**

Civil Action No. 20-cv-2722-RMR-KLM

BOXER F2, L.P.,

    Plaintiff,

v.

WILLIAM BRONCHICK, individually,
CAROLINE BRONCHICK, individually,
BRONCHICK & ASSOCIATES, P.C., a Colorado professional corporation,
BRONCHICK CONSULTING GROUP, LLC, a Colorado limited liability company,
HASAKI PROPERTY HOLDINGS, LLC, a Delaware limited liability company.

    Defendants.

---

**ORDER**

---

This matter is before the Court on the Defendants William Bronchick, Caroline Bronchick, Bronchick & Associates, P.C., Bronchick Consulting Group, LLC, and Hasaki Property Holdings LLC's (collectively, "Defendants") Motion for Summary Judgment, ECF 29. The Plaintiff, Boxer F2, L.P. ("Boxer") has filed a response, at ECF 37, and the Defendants have filed a reply, at ECF 42.[1] The matter is fully briefed and is ripe for review. For the reasons that follow, the Defendants' motion is **DENIED.**

---

[1] The Court notes that the reply filed at ECF No. 42 appears to have been filed only on behalf of Defendants Caroline Bronchick, Bronchick & Associates, P.C., Bronchick Consulting Group, LLC, and Hasaki Property Holdings LLC's.

## I.   BACKGROUND

In a separate case in 2016, *Boxer F2, L.P. v. Flamingo West, Ltd.*, 14-cv-0317-PAB-MJW (the "Underlying Lawsuit"), Chief Judge Brimmer entered judgment in favor of Boxer and against William Bronchick for $891,970.00 ("Underlying Lawsuit Judgment"). This case centers on the Plaintiff's attempt to collect that judgment.

The Plaintiff in this lawsuit alleges that William Bronchick and his ex-wife, Caroline Bronchick, devised a scheme to avoid paying the Underlying Lawsuit Judgment. This scheme purportedly involved implementing superficial creditor-debtor relationships between multiple entities owned and operated by William Bronchick. For clarity, the Court will first set forth the facts relevant to the Underlying Lawsuit and Underlying Lawsuit Judgment and will then describe the various entities and facts at issue in this case.

**Underlying Lawsuit[2]**

In 2003, a company called Flamingo West, Ltd., operated by the Defendant William Bronchick, executed a lease for premises located in the Pavilion Tower Building in Aurora, Colorado. In 2011, Boxer acquired the Pavilion Tower Building. In approximately 2012, Flamingo West breached its lease agreement by failing to make rent payments and by abandoning the premises. Boxer brought suit against Flamingo West, Bronchick & Associates, William Bronchick, and Bronchick & Associates, P.C.

---

[2] Unless otherwise stated, the facts in this section are established by the Court's order in *Boxer F2, L.P. v. Flamingo West, Ltd.*, 14-cv-0317-PAB-MJW, attached to the Plaintiff's response at ECF 29-1.

In the course of the Underlying Lawsuit, as a sanction for bad faith discovery conduct, the court found that William Bronchick was the sole owner and operator of Flamingo West, that Flamingo West intended to defraud creditors by transferring Flamingo West's assets to William Bronchick; and that Bronchick PC is a mere continuation of Bronchick & Associates.

After the evidence was presented at trial, the court found that Flamingo West was the only party to the lease agreement, but that Bronchick PC and Bronchick & Associates operated out of the leased premises. Because the court found that neither Bronchick PC nor Bronchick & Associates were parties to the lease, however, it found that they could not be determined to have breached the lease agreement.

The court found, however, that William Bronchick was personally liable for Flamingo West's breach of the lease agreement because Flamingo West was the alter ego of William Bronchick and because William Bronchick had used Flamingo West's corporate form to perpetrate a wrong against Boxer. Thus, as a result of the Underlying Lawsuit, William Bronchick became personally liable to Boxer for the Underlying Lawsuit Judgment.

**Bronchick Entities Relevant to This Lawsuit[3]**

While not at issue in the Underlying Lawsuit, a series of other entities owned or controlled by William Bronchick are relevant here:

---

[3] Unless otherwise stated the facts in this section are those undisputed facts alleged in the Complaint, ECF 1 and admitted in the Answer, ECF 11.

Bronchick Consulting Group, LLC ("BCG") is a Colorado limited liability company, William Bronchick is the sole member of BCG.

Bronchick & Associates, P.C. ("B&A") is a Colorado professional corporation. William Bronchick is the sole shareholder, officer, and director of B&A.

Hasaki Property Holdings LLC ("Hasaki") is a Delaware limited liability corporation. William Bronchick and Caroline Bronchick are members of Hasaki.

On January 15, 2014, Hasaki entered into Line of Credit Agreements with BCG and B&A. Pursuant to these agreements, BCG and B&A were permitted to borrow $400,000 each from Hasaki.

**Boxer's Attempts to Collect the Underlying Lawsuit Judgment**

In an effort to collect the Underlying Lawsuit Judgment from William Bronchick, Boxer requested multiple charging orders and writs of continuing garnishment. Writs of continuing garnishment to B&A and BCG were issued by the court in the Underlying Lawsuit in August 2018. These writs directed B&A and BCG to pay non-exempt earnings to Boxer each time they paid William Bronchick during the applicable garnishment period. In October 2016, the court in the Underlying Lawsuit issued a charging order against BCG "charging the membership interest of William Bronchick in Bronchick Consulting Group, LLC with payment of the unsatisfied amount of the Judgments against William Bronchick in this case, plus post-judgment interest and costs."

In December 2019, the United States District Court for the District of Delaware entered a charging order against Hasaki "charging the membership interest of William

Bronchick in Hasaki Property Holdings, LLC with payment of the unsatisfied amount of the judgments against William Bronchick in this case, plus post-judgment interest and costs."

The Plaintiff has presented evidence that, since the service of the charging orders, William Bronchick has not personally taken any money or capital contributions from Hasaki or BCG. The Plaintiff has also presented evidence that William Bronchick has moved money from Hasaki and BCG into B&A, which is not subject to a charging order.

The Plaintiff alleges that the line of credit between Hasaki and BCG and B&A, respectively, was specifically intended to allow William Bronchick to obtain funds from Hasaki through "loans," which would not have implicated the applicable charging orders.

The Plaintiff now asks the Court to hold the defendant corporations liable for William Bronchick's obligations. It also asks the Court to find that William Bronchick and his ex-wife, Caroline Bronchick, conspired to protect William Bronchick from paying the Underlying Lawsuit Judgment. The Defendants seek summary judgment on all claims.

## II.   LEGAL STANDARD

To succeed on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine dispute of material fact; and (2) the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When analyzing a motion for summary judgment, the court must look at the factual record and the reasonable inferences to be drawn from the record in the light most favorable to the non-moving party." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). However, the nonmoving party may not simply rest upon its

pleadings at this stage; rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249.

### III.   ANALYSIS

#### A.   Alter Ego/Reverse Pierce Corporate Veil

In its first three causes of action, the Plaintiff seeks declaratory judgment, asking the Court to determine that Hasaki, BCG, and B&A are each the alter ego of William Bronchick. In these causes of action, the Plaintiff asks the Court to reverse pierce the corporate veil and find these entities liable for the judgments entered against William Bronchick in the Underlying Lawsuit.

Where a federal court hears a case pursuant to its diversity jurisdiction, it applies the substantive law of the forum state. *Barrett v. Talon*, 30 F.3d 1296, 1300 (10th Cir. 1994). The parties appear to agree that Colorado law applies to this action. The parties

also appear to agree that the appropriate standard for analyzing a claim for reverse piercing of the corporate veil is that set forth in *In re Phillips*, 139 P.3d 639, 645 (Colo. 2006).

To prevent abuse, Colorado law permits trial courts to disregard the corporate form and pierce the corporate veil when a corporation and a shareholder are alter egos of each other. *Id.* Reverse piercing occurs when a claimant seeks to hold a corporation liable for the obligations of an individual shareholder. A court may reverse pierce the corporate veil and obtain the assets of a corporation for the obligations of a controlling shareholder or other corporate insider only upon a clear showing that (1) the controlling insider and the corporation are alter egos of each other, (2) justice requires recognizing the substance of the relationship over the form because the corporate fiction is utilized to perpetuate a fraud or defeat a rightful claim, and (3) an equitable result is achieved by piercing. A claimant must make a clear and convincing showing of each factor. *Id.*

To determine whether a corporation is an alter ego, courts consider a number of factors, including whether: (1) the corporation is operated as a distinct business entity, (2) funds and assets are commingled, (3) adequate corporate records are maintained, (4) the nature and form of the entity's ownership and control facilitate misuse by an insider, (5) the business is thinly capitalized, (6) the corporation is used as a "mere shell," (7) shareholders disregard legal formalities, and (8) corporate funds or assets are used for noncorporate purposes. *Id.* at 644.

The Plaintiff argues that summary judgment is not proper because it has presented evidence at least establishing disputes as to material facts on its declaratory judgment claim. The Court agrees.

The Plaintiff has alleged facts that, when construed in the light most favorable to it, could cause a reasonable factfinder to determine that the defendant entities are alter egos of William Bronchick. The Plaintiff has identified evidence that the corporations were not operated as distinct business entities. The Plaintiff has identified evidence of comingling of funds among Hasaki, BCG, and B&A, including evidence that BCG transferred money directly to Hasaki and evidence that proceeds from the sale of Hasaki properties were deposited outside of Hasaki. *See e.g.*, ECF 37, pp. 11-13; ECF 37-24.

The Plaintiff has also pointed to evidence that inadequate corporate records were maintained by the three entities. *See e.g.*, ECF 37, pp. 13-14. So, too, does the evidence suggest that William Bronchick controlled the entities for his benefit, and used funds for noncorporate purposes. For example, the Plaintiff has pointed to evidence that Hasaki paid $30,000 in legal fees to a law firm for legal services rendered to William Bronchick, personally. The Plaintiff has also cited to evidence that Hasaki paid $700.00 to Universal Property Holdings, William Bronchick's personal IRA or a company owned by his and Caroline Bronchick's IRAs. The Plaintiff also identified evidence that Hasaki issued a $5,000 check to William Bronchick's sister. William Bronchick testified that the payment was a loan, but there was no note formalized for the loan, nor was interest charged. *See* ECF 37, pp. 9-11.

The Plaintiff also provided an expert report indicating that B&A received payments from Hasaki which were described as distributions to William Bronchick's family members, who are not shareholders of B&A. ECF 37-24. For example, the Plaintiff has identified evidence that B&A received a $20,000 check for "PhylRock/WB Distribution." PhylRock is a reference to William Bronchick's mother, Phyllis Rockower, who was never entitled to any distribution from Hasaki and who is not a shareholder of B&A. When viewed in the light most favorable to the Plaintiff, there is evidence sufficient to support an alter ego relationship between William Bronchick and Hasaki, BCG, and B&A.

So, too, has the Plaintiff identified evidence sufficient to support a finding that the corporate fiction of these entities was used to improperly avoid payment of the Underlying Lawsuit Judgment and that an equitable result would be achieved by reverse piercing the corporate veil. The Plaintiff has identified evidence suggesting that, after the service of the charging order, William Bronchick stopped taking capital distributions and that he ceased doing so because he does not want the contributions to be subject to the charging orders. Finally, the Plaintiff has provided an expert report indicating that loans from Hasaki to BCG and B&A are more appropriately characterized as draws, which would make them subject to the Plaintiff's collection efforts. *Id.*

Ultimately, the evidence presented suggests that disputes of material fact exist, and the Defendants have therefore not established an entitlement to summary judgment.

### B. Civil Conspiracy

The Defendants also seek dismissal of the Plaintiff's fifth claim for relief, alleging civil conspiracy against William Bronchick and Caroline Bronchick. To state a claim for civil conspiracy under Colorado law, a plaintiff must show: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result. *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995).

The parties' briefing on this claim makes clear that issues of material fact remain in dispute, precluding a finding of summary judgment. Specifically, there is conflicting evidence regarding whether Caroline Bronchick knew about or participated in the actions taken by Hasaki. For example, there is conflicting testimony regarding whether Caroline Bronchick knew about the line of credit agreements between Hasaki and BCG/ B&A. *See* ECF Nos. 37-5 and 37-1. There is also conflicting testimony regarding whether Caroline Bronchick knew about the Hasaki charging order or the loans issued by Hasaki to BCG and B&A. *Id.* As the Court observed in *F.D.I.C. v. First Interstate Bank of Denver, N.A.*, 937 F. Supp. 1461, 1473 (D. Colo. 1996), "[b]y its very nature a conspiracy is seldom provable by direct evidence. Thus, the requisite agreement may be found by viewing the circumstances." Here, the circumstances are unclear, and the evidence is conflicting. These genuine issues of material fact preclude summary judgment at this time. The Defendants' motion on this issue is denied.

## IV. CONCLUSION

For the reasons stated herein, the Defendants' Motion for Summary Judgment, ECF 29, is **DENIED.**

DATED:  June 2, 2022

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge